## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

ERIC D. WILLIAMS                                                    PLAINTIFF

V.                          No. 3:20-CV-00070-JTR[1]

BRENT COX, Administrator,
Greene County Detention Facility, *et al.*                    DEFENDANTS


## MEMORANDUM & ORDER

### I.  Introduction

On February 27, 2020, Plaintiff, Eric D. Williams ("Williams"), was a

convicted federal prisoner incarcerated in the Greene County Detention Facility

("GCDF") awaiting sentencing.[2] On that date, he initiated this action by filing a *pro*

*se* Complaint asserting § 1983 claims against Defendants GCDF Administrator

Brent Cox ("Cox"), GCDF Deputy Lowen Cate ("Cate"), GCDF Sergeant Barnum

---

[1] By consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73. *Doc. 68.*

[2] The United States Marshal's Service has a contract with the GCDF pursuant to which federal pre-trial detainees and convicted prisoners are incarcerated there until their federal charges are resolved. Although Williams asserted in his Complaint that he was a federal pre-trial detainee "still awaiting sentencing" (*Doc. 2 at 4*), a review of Williams's criminal case reveals that, on March 27, 2019, he was convicted of nine felony drug offenses. *See USA v. Eric Deshone Williams*, 4:16-cr-0003-KGB (E.D. Ark.) at *Doc. 372*. Thus, at the time each of his constitutional claims arose, he was a convicted prisoner, awaiting sentencing.

On December 3, 2020, Williams was sentenced to 180 months in the Bureau of Prisons. *Id. at Doc. 418*. He is now incarcerated in the Canaan United States Penitentiary in Waymont, Pennsylvania. *Doc. 86.*

("Barnum"), GSCF Assistant Administrator D. Crittenden ("Crittenden") and Green County Sheriff Steve Franks ("Franks"). *Doc. 2*. On April 9, 2020, Williams filed an Amended Complaint clarifying the § 1983 claims asserted in his Complaint and asserting a new claim against Defendant GCDF "staff officer" Ryan Hubble ("Hubble"). *Doc. 6*. Read together,[3] those pleadings allege that:

(1) Jail Administrator Cox, Assistant Jail Administrator Crittenden, and Sheriff Franks, acting in their "official capacity," as the administrators of the GCDF, enacted disciplinary policies, practices, and procedures which violated Williams's due process rights under the Fourteenth Amendment and resulted in him being placed in administrative segregation in violation of his constitutional rights. *Doc. 6 at 5*.

(2) Barnum, Cate, and Hubble, acting in their "individual capacity," violated his due process rights "by following the policy and/or custom of the [GCDF] Administration," which resulted in each of them issuing verbal disciplinaries and summarily placing him in administrative segregation as punishment. *Id. at 6*. Williams makes the following specific claims against these individual Defendants:

---

[3] *See Topchain v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (*pro se* complaint must be "liberally construed" and "*pro se* litigants are held to a lesser pleading standard that other parties"); *Kiir v. N.D. Pub. Health*, 651 F. App'x 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint).

(a) On or about October 25, 2019, Barnum gave Williams a verbal disciplinary for allegedly using paper to block the vent in his cell. *Doc. 2 at 6*. This resulted in Williams being placed in segregation for "*five days*." *Id*. Williams vehemently denied blocking the vent and explained to Barnum that it was already blocked when he was assigned to the cell a few days earlier. *Id*. Williams verbally requested a disciplinary hearing, and Barnum replied "[you] do not get a hearing, but [you] can fill out a due process form [which will be reviewed later by] the administrator … to see if he will affirm or overturn [Barnum's] judgment [in issuing the disciplinary]." *Id*. After receiving the verbal disciplinary, Williams states that:

> I did not receive a copy of written notice of [the] alleged [disciplinary] violation. I did not receive a written statement by an officer of facts or the evidence relied on and the reasons for the disciplinary action. No disciplinary hearing before punishment and/or deprived of rights. The disciplinary process is a sham and does not provide me with adequate due process.

*Id*.

On January 19, 2020, Barnum issued Williams another verbal disciplinary, which resulted in him being placed in segregation "*for (5) days*," without being accorded any of the due process protections he was entitled to receive under the Eighth and Fourth Amendments. *Id. at 8*; *Doc. 6 at 2*.

(b) Williams alleges that, on December 18, 2019, Cate issued him a verbal disciplinary and ordered him to go immediately to segregation for *three days*,

without any explanation of what he did to receive the disciplinary.[4] *Doc. 2 at 7*. As Cate escorted him to "the hole," Williams asked him why he was being punished and Cate responded, "he didn't know." *Id*. Williams goes on to state he was never given "a copy of the written notice of [the] alleged claimed violations," a "written statement by an officer of the facts and evidence relied on and the reasons for the disciplinary … [or] a hearing to state my case before punishment was given." *Id*.

Williams sums up the constitutional violations associated with the two verbal disciplinaries from Barnum and the one verbal disciplinary from Cate in the following terms:

> In none of these three disciplinary actions … was I given the opportunity to be heard in person and to present witnesses and documentary evidence. Nor is there a neutral and detached hearing officer. The officer who filed [the] complaint judged me and issued disciplinary action. A copy of the written statement by the fact finder of the evidence relied upon and the reasons for the decision was never furnished to me.

*Id. at 8*.

(c) In his Amended Complaint, Williams states that, on March 10, 2020, Hubble issued him a verbal "false disciplinary" for cursing and intimidating staff. *Doc. 6 at 7*. Hubble summarily ordered him to go to administrative segregation for "*three days*," and Williams never received a copy of the disciplinary charge. *Id*.

---

[4] See, Doc. 79, Ex. A5 at 2.

4

After he was placed in segregation, Williams was given a "due process form" that allowed him to check a box if he wished "to exercise [his] right to due process" in connection with the disciplinary. *Doc. 79, Ex. A5 at 6*. Williams checked that box and listed the names of five witnesses he wished to call to testify about the incident. *Id.*; *Doc. 6 at 7*. Williams never received a response to the "due process form," and "no investigation/inquiry into this incident was ever done." *Doc. 6 at 7*. Williams states that he *never received*: (1) a copy of the disciplinary charge; (2) a disciplinary hearing; (3) an opportunity to explain to a neutral hearing officer why the disciplinary was false; (4) anything back from a hearing officer explaining why the box he checked on the GCDF "due process form," requesting a disciplinary hearing and the right to testify and call witnesses *was ignored*; or (5) a written decision from the hearing officer on the merits of the disciplinary. *Id*. Williams states that all of these same due process violations occurred in connection with the disciplinaries he received from Hubble, Barnum and Cate. *Id. at 6-7*.

Finally, Williams states that he was *blocked* from using the GCDF kiosk to file grievances raising his procedural due process claims. *See Doc. 2 at 5–8; Doc. 6 at 5*. Importantly, the GCDF grievance procedure specifies that *the kiosk* is to be used by prisoners to file a "grievance statement." *Doc. 79, Ex. A6 at 2*. Williams states that he complained verbally and in writing to Ms. Hubble, the "grievance officer," about her *blocking him* from using the kiosk to file grievances complaining

5

about the unconstitutional policies and procedures governing the GCDF disciplinary process *and* Barnum, Cate, and Hubble following those unconstitutional policies to issue him verbal disciplinaries that placed him in administrative segregation, without any of the due process protections he was entitled to receive under the Eighth and Fourteenth Amendments.[5] *Doc. 2 at 5.*

Williams states that Ms. Hubble told him she was *not* the person who blocked him from "access to write a grievance on the kiosk, but it was the [jail] administrator 'Brent Cox' who was blocking/denying [him] access to the grievance process." *Id*. Finally, Williams states that he has been "blocked from writing grievances since Dec[ember] 2, 2019, and I've informed the grievance officer, A. Hubble and [Deputy] U.S. Marshal [in the Eastern District of Arkansas] Theo Anderson, on

---

[5] "The Supreme Court has outlined procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974) (listing "written notice of the charges;" "a brief period … to prepare;" a written statement of "the evidence relied on and reasons for the disciplinary action;" and the ability for the inmate to "call witnesses and present documentary evidence"); *Sanders v. Hobbs*, 773 F.3d 186, 191 (8th Cir. 2014). An impartial decision-maker is also a fundamental requirement of due process, but all that due process requires is that no member of the disciplinary board "has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592 (Marshall, J. concurring); *Smith v. Malek*, 822 F.2d 812, 815-16 (8th Cir. 1987) ("The requirement of a neutral and detached decision-maker must not be impaired."); *Diercks v. Durham*, 959 F.2d 710, 713 (8th Cir. 1992) (stating "a charging officer should not sit in judgment on her own complaint in a disciplinary proceeding," and the decision-maker cannot be "directly involved" so as to jeopardize objectivity).

Based on Williams undisputed sworn statements describing the GCDF disciplinary policies, practices, and procedures, it appears those policies, practices, and procedures may well be unconstitutional under *Wolff* and its progeny.

[February 13, 2020] of this block [on his access to the grievance kiosk] and still nothing has happen[ed] yet." *Id. at 7*.

In summation, Williams brings claims: (1) claims against Barnum, Cate, and Hubble, alleging that those Defendants personally denied him procedural due process before placing him administrative segregation; and (2) claims against Cox, Crittenden, and Franks, alleging that Greene County has a "policy, practice, or pattern" of denying inmates their procedural due process rights.[6] He sued all Defendants in both their personal and official capacities. He further alleges that he was blocked from filing grievances related to these claims.

On July 19, 2021, Defendants filed a Motion for Partial Summary Judgment (*Doc. 77*), Supporting Brief (*Doc. 78*), and Statement of Undisputed Facts (*Doc. 79*) arguing that: (1) Williams's individual due process claims against Barnum and Cate are barred, as a matter of law, because he failed to properly exhaust his administrative remedies on his claims against them;[7] and (2) Williams should be allowed to proceed with his official capacity due process claims against Defendant

---

[6] See Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).

[7] On or about March 1, 2020, it appears the block was lifted on Williams using the kiosk to submit grievances. *Doc. 79, Ex. A3 at 69*. Defendants have *not* moved for summary judgment on Williams's individual capacity due process claim against Hubble, because "[Williams] *did* properly exhaust administrative remedies [by filing a grievance statement] prior to filing his Amended Complaint regarding his discipline on or about March 10, 2020, with regard to his claim against Defendant Ryan Hubble." *Doc. 78 at 12* (emphasis in original); *see also, Doc. 77 at 6*; *Doc. 79, Ex. A3 at 78*.

Hubble, and all other official capacity claims, including his claims against the three named administrators, should be dismissed, without prejudice, as cumulative Defendants who are not necessary to establish *Monell* liability against Greene County.

Importantly, because Williams signed his Complaint and Amended Complaint *under penalty of perjury*, the Court must treat the facts in those pleadings as if they were stated in a sworn affidavit. *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (providing a verified complaint made under threat of perjury "is the equivalent of an affidavit and can serve as [a plaintiff's] response to [a] defendant's summary judgment motion); *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994–95 (8th Cir. 2001) (complaint signed under penalty of perjury is equivalent of a verified complaint, and a plaintiff may rely on the facts stated therein just as if they had been stated in an affidavit). In their summary judgment papers, Defendants have not controverted or disputed any of those facts.

For the reasons explained below, Defendants' Motion for Partial Summary Judgment (*Doc. 77*) is denied.

However, I find that all of Williams' procedural due process claims fail, as a matter of law, and must be DISMISSED, *sua sponte*.[8]

---

[8] *See* 42 U.S.C. § 1997e(c)(1) ("The court shall *on its own motion* … dismiss any action brought with respect to prison conditions under section 1983 of this title … if the court is satisfied that the action … fails to state a claim upon which relief can be granted ….") (emphasis added);

## II. Discussion

### A. Because Williams's Access to the Kiosk Used to File Grievances Was Blocked During the Relevant Time Period, He Was Relieved of His Obligation to Exhaust His Administrative Remedies on His Claims Against Barnum and Cate

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their *available* administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (The PLRA only requires exhaustion of "such administrative remedies as are *available*.") (emphasis added). An administrative remedy is *not* available: (1) when the process "operates as a simple dead end," with officials unable or consistently unwilling to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when

---

*Maxwell v. Wooten*, Case No. 5:19-cv-225-BSM-JTR, 2021 WL 2188757, (E.D. Ark. April 22, 2021), report and recommendation adopted by *Maxwell v. Wooten*, Case No. 5:19-CV-225-BSM, 2021 WL 2188946 (E.D. Ark. May 28, 2021) (Court may *sua sponte* dismiss a claim at the summary judgment stage if it is clear that plaintiff's factual allegations do not state a viable constitutional claim); *Davis v. Gallagher*, 951 F.3d 743, 750–51 (6th Cir. 2020) (holding that, "whatever threshold dismissal determination a district court makes under [the initial screening required by] § 1915A, it is allowed to make subsequent dismissal determinations in accordance with § 1997e(c)(1)"); *Beenick v. LeFebvre*, 684 F. App'x 200, 204 (3d Cir. 2017) (unpublished) (upholding district court's *sua sponte* dismissal prisoner's claim at the summary judgment stage pursuant to § 1997e(c)(1), which gives the court "the authority to review the claim, regardless of the stage of the case").

9

prison officials thwart inmates from taking advantage of a grievance process through "machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016).

The Eighth Circuit has repeatedly held that an incarcerating facilities' administrative remedies were *not* available where the prisoner demonstrates that the defendants hindered his efforts to complete exhaustion. *See*, *Townsend*, 898 F.3d at 783 (holding remedy unavailable where inmate was misled by officials when he was advised not to file a formal grievance until he received a response to his informal complaint); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (explaining that "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy that prison officials prevent an inmate from using is not "available" under the PLRA).

GCDF's bare bones grievance procedure explicitly required that "[a] grievance shall be submitted *in the form of a grievance statement by the inmate via the electronic kiosk request system*." *Doc. 79, Ex. A6 at 2* (emphasis added).

Williams states, under penalty of perjury, that: "Ever since Dec. 2, 2019" he has been denied access to write a grievance on the kiosk; and (2) According to the

grievance officer, "Mrs. A. Hubble,"[9] Jail "Administrator 'Brent Cox' was… blocking/denying me access to the grievance process." *Doc. 2 at 5*. Defendants have *not* disputed these facts.

The GCDF grievance procedure explicitly states that a prisoner must use *the kiosk* to properly initiate a grievance. *Doc. 79, Ex. A6 at 2*. After he was blocked from using the kiosk to file a grievance, he no longer had an *available administrative remedy* to initiate a "grievance statement" naming Barnum and Cate and stating his complaint about their allegedly unconstitutional conduct in issuing him verbal disciplinaries with no procedural due process protections. Accordingly, Williams was *not required* to exhaust the administrative remedies that were impossible for him to access in the way specified in the GCDF grievance policy.

In their summary judgment papers, Defendants make the startling argument that, in lieu of the required "grievance statement" specified in the GCDF grievance policy, Williams somehow should have divined that he must file a "request" raising his complaints against Barnum and Cate—presumably because he was still permitted to use the kiosk to make "requests," but *not* to submit "grievance statements." Defendants make no effort to explain *how* Williams was supposed to know about this *ad hoc* alternative to filing the specified "grievance statement," much less that

---

[9] "Mrs. A. Hubble," the grievance officer, is not the named defendant, Ryan Hubble, "staff officer."

filing such a "request" was *mandatory* if a prisoner was *blocked* from using the kiosk to file a "grievance statement."

The GCDF's written grievance procedure says *nothing* about how a prisoner like Williams, who is blocked from using the kiosk to submit a "grievance statement," is required to use the kiosk to submit a "request" raising his complaints about conditions of confinement. Without *clear and explicit language* in GCDF's written grievance procedure, explaining to Williams his obligation to file a "request" raising his grievable claims, in lieu of the explicitly required "grievance statement," Defendants are grasping at straws in trying to argue Williams had *any meaningful access* to the grievance procedures after he was blocked from using the kiosk to file the required "grievance statements." *See GCDF Grievance Policy, Doc. 79, Ex. A6 at 1-3.*

Accordingly, Defendants' Motion for Summary Judgment on Williams's individual capacity due process claims against Barnum and Cate, based on his alleged failure to exhaust administrative remedies, is DENIED.

### B. Defendants' Argument that Williams's Official Capacity Claims Against Cox, Crittenden, and Franks Should Only Proceed Against One of Those Parties

As a matter of law, the "official capacity" claims Williams asserts against the Defendants must be construed as claims against their employer, Greene County. *Brewington v. Keener,* 902 F.3d 796, 800 (8th Cir. 2018). Greene County cannot be

held vicariously liable, in a § 1983 action, for the individual acts of omissions of its employees. *Id.* at 800-01 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694–95 (1978)). Rather, it can be held liable only if its "policies, customs, and practices" caused Williams's injury. *Brewington,* 902 F.3d at 801–02; *Corwin v. City of Independence, Missouri,* 829 F.3d 695, 699–700 (8th Cir. 2016).

Here, Williams has specifically alleged that Defendants, acting in their official capacities as employees of the GCDF, enacted and enforced disciplinary policies, practices, and procedures that authorized jail staff to issue verbal disciplinaries, without providing a prisoner with a copy of the written charges, a disciplinary hearing, an opportunity to call witnesses, or an unbiased decision-maker, in violation of the "due process clause" of the Fourteenth Amendment, as construed by the United States Supreme Court and the Eighth Circuit Court of Appeals. *Docs. 2 & 6; s*ee *Wolff,* 418 U.S. at 563–66; *Sanders,* 773 F.3d at 191 ("Under *Wolff,* an inmate is entitled (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action.") (internal quotations and citation omitted).

13

In their Motion for Partial Summary Judgment, Defendants acknowledge that Williams exhausted his administrative remedies on his official capacity due process claims, presumably by submitting "requests" challenging the constitutionality of the GCDF disciplinary policies and procedures. *Doc. 78 at 1, n.1*. They further acknowledge that Williams exhausted his administrative remedies against Hubble, by filing a grievance on March 20, 2020.[10] However, without citing any legal authority, they argue that, because only *one* official-capacity Defendant is necessary to establish *Monell* liability against Greene County, all other Defendants are entitled to be dismissed, without prejudice. *Id.*

While I am willing to keep an open mind, I am unaware of any case law that allows counsel for Defendants to dictate to Williams how many GCDF employees he is permitted to name, in their official capacity, to ensure he has stated an actionable claim against Greene County. Accordingly, Defendants' Motion for Partial Summary Judgment seeking the dismissal of two of the three GCDF administrators is DENIED.

### C. The Short Duration of Williams's Confinement in Segregation Did Not Give Rise to a "Liberty Interest" Sufficient to Support a Cognizable Fourteenth Amendment Procedural Due Process Claim

---

[10] Apparently, the "block" on Williams's access to the grievance procedure was lifted sometime after this suit was initiated on February 27, 2020.

In his pleadings, which he executed under penalty of perjury, Williams makes it clear that his due process claims against Barnum, Cate, and Hubble are for placing him in segregation on four separate occasions, with none of those intervals of confinement lasting more than "five days." *Doc. 2 at 6*. He further states that, while in segregation he was "deprived of his [sleeping] mat and blanket, and the right to use the phone, order commissary, received visits, and all other rights and privileges of other prisoners." *Doc. 6 at 7*.

A prisoner has a right to procedural due process, under the Fourteenth Amendment, only if he has a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Prisoners do *not* have a liberty interest in avoiding temporary confinement in administrative or punitive segregation because such punishment does not create an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 482–86 (no "liberty interest" implicated by thirty days in disciplinary segregation); *see also Ballinger v. Cedar County,* 810 F.3d 557, 562-63 (8th Cir. 2016) (no "liberty interest" implicated by one year in solitary confinement); *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010) (no "liberty interest" implicated by nine months in administrative segregation); *Phillips,* 320 F.3d at 847 (no "liberty interest" implicated by thirty-seven days in isolation and

loss of privileges of contact visitation, exercise, and chapel, even if demotion to segregation was without cause); *Portley-El v. Brill*, 288 F.3d 1063, 1065–66 (8th Cir. 2002) (no "liberty interest" implicated by thirty days in punitive segregation); *Kennedy v. Blankenship,* 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (no "liberty interest" implicated by thirty days in punitive segregation, which included the suspension of mail, telephone, visitation and commissary privileges).

The facts in Williams's pleadings, which he swore to be true, make it clear his due process claim rests on four separate incidents in which each period of confinement in segregation lasted for *five (5) days or less*. The privileges he lost during these short intervals of confinement are typical of the punishment associated with being placed in segregation. Thus, nothing about the facts surrounding Williams's brief periods of confinement in segregation suggests that the conditions he endured caused him to suffer an "atypical and significant hardship," as required under *Sandin. See Sandin*, 515 U.S. at 482–86 (holding that the due process clause applies only when prison officials impose an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life"); *Portley-El v. Brill,* 288 F.3d 1063, 1065–66 (8th Cir. 2002) (holding that thirty days in punitive segregation was not an atypical and significant hardship, under *Sandin*); *Kennedy v. Blankenship*; 100 F.3d 640, 642-43 (8th Cir. 1996) (holding that a prisoner did not have a liberty interest, and thus no procedural due process rights, in avoiding

16

placement in punitive isolation for thirty days); *Scott v. Jackson,* No. 5:15-CV-329-JLH, 2017 WL 3530146, at *5 (E.D. Ark. July 24, 2017), *adopted* 2017 WL 3529243 (E.D. Ark. Aug. 16, 2017), *appeal dismissed,* 2017 WL 8293563 (8th Cir. Nov. 13, 2017) (rejecting due process challenge to ADC's 72-hour "behavior control" policy).

Because Williams, as a matter of law, has failed to state a viable due process claim against Barnum, Cate, or Hubble, the Court, *sua sponte*, dismisses those claims, with prejudice.

### D. Williams's Official Capacity Monell Claim Against Greene County Also Fails, as a Matter of Law

For his single remaining claim, Williams plausibly alleges that GCDF has a policy, pattern, or practice [11] of denying inmates their procedural due process rights before placing them in administrative segregation. Under *Wolff* and its progeny, that alleged policy or practice would appear to be unconstitutional, as applied to *pretrial detainees*.[12]

---

[11] Because Defendants did *not* provide a full copy of GCDF's disciplinary action policy, it is unclear if GCDF employees are following a written "policy" when they deny inmates their due process rights, or if employees do so based on a "pattern" or "practice" of behavior cultivated over time.

[12] *See Williamson v. Stirling*, 912 F.3d 154, 184 (4th Cir. 2018) ("[A] jail official that seeks to discipline a pretrial detainee must provide the detainee with at least the procedural protections required by the *Wolff* decision."); *Hanks v. Prachar*, 457 F.3d 774, 776 (8th Cir. 2006) (finding that *Sandin*'s "atypical and significant hardship" test does *not* apply to pretrial detainees); *Cummings v. Dunn*, 630 F.2d 649, 651 (8th Cir. 1980) (finding that no constitutional violation occurred where a pretrial detainee was afforded the full *Wolff* due process protections before being placed in segregation).

However, Williams was a *convicted prisoner*, not a pretrial detainee, when he was placed in administrative segregation. Accordingly, Williams does not have standing to bring an action seeking to have Greene County's procedural due process practice be declared unconstitutional. *Cty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004) ("A party has standing to bring a claim if it has suffered some actual or threatened injury")

Further, because Williams is no longer incarcerated at GCDF, it also appears his *Monell* claim is now moot. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (finding a request for declaratory relief moot where prisoner was transferred to a different facility and was "no longer subject to the alleged unlawful policies or conduct of [prison] officials.").

Finally, and most importantly, Williams's constitutional rights were not violated when he was placed in administrative segregation. Absent a constitutional violation by Defendants in their individual capacities, Greene County cannot be held liable for its employees' *constitutional* actions, even if those actions were taken pursuant to a custom, practice, or policy of Greene County. *Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019); *Schoettle v. Jefferson County*, 788 F.3d 855, 861–62 (8th Cir. 2015) ("We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim.")

18

Because William's individual capacity claims fail, as a matter of law, so too does his official capacity claim. Accordingly, Williams's *Monell* claim is dismissed, without prejudice.

### III.   Conclusion

Because Williams's individual capacity claims against Defendants Barnum, Cate, and Hubble fail, as a matter of law, those claims are dismissed, *sua sponte*. Williams's official capacity claim against Greene County, based on the GCDF's allegedly unconstitutional disciplinary policies, practices, and procedures during the time he was incarcerated in that facility also fails, as a matter of law. Accordingly, Williams's *Monell* claim is also dismissed.

IT IS THEREFORE ORDERED THAT Defendants' Motion for Partial Summary Judgment (*Doc. 77*) be and it is hereby DENIED, in all respects.

IT IS FURTHER ORDERED, *SUA SPONTE*, THAT Plaintiff's individual capacity claims against Barnum, Cate, and Hubble be and they hereby are DISMISSED, WITH PREJUDICE, and Williams's official capacity claim against Green County be DISMISSED, WITHOUT PREJUDICE.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an *in forma pauperis* appeal of this Memorandum and Order or the accompanying Judgment would not be taken in good faith.

19

SO ORDERED this 24th day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE